Judge Mills
delivered the Opinion of the Court.
Tins is a writ of error to reverse a judgment in ejectment, rendered against the plaintiffs in error, for a lot in Louisville. Both parties claim the lot under Archibald Lockheart, deceased; the plaintiffs in error by conveyance from Elizabeth Lockheart, who claims to be sole heiress of the decedent; and tbe defendants under James Lockheart, who claims to be the heir.
After issue joined to the original demise laid in the declaration, in the name of F. W. S. Grayson alone, the court, on motion of the plaintiff below, ' suffered a new count to be filed, containing a demise in the name of James Lockheart, as a new- lessor, 3 7 *260 shewing for cause, that there was a blank left in the original declaration, which was intended to be filled up with the name of James Lockheart, but was neglected. The defendant below objected and excepted to this opinion of the court
.Declaration ili ejectment* cannot be &- •mended by adding a new demiáe, more than a plaintiff in any other action can add a cu-■plainliiT.
Direction for the now demise to be struck out, on the return of the cause.
Aliens may purchase, take by grant from the state or by devise aud convey the title, or hold against all the world, till divested by office found, by common law, without the aid of the act of J 800.
This is not the first time we have been called to decide upon the propriety of adding clauses in the name of new lessors, and as lately as the case of Elliott vs. Bohannon &c. 4 Monroe 124; Cuney’s heirs vs. Tibb’s heirs, ib. 442, as well as previous cases; we have held that such an amendment in general, was improper, and vve see no reason for attempting to make this case an exception to the rule. We might as well permit a plaintiff who had issued his writ and declared in the name of A, to insert the name of B also, and malte it essentially a new suit, because he neglected to do so at first. In this case the amendment did take a considerable effect on the evidence, and enabled the plaintiff below to meet the defendants on ground different from that on which he stood on the original demise.
The amendment was improper and ought not to have been .allowed, and after a reversal the new count must be stricken from the record and the plaintiff brought to the ground on which be originally stood on the first demise.
But there are oilier questions which may occur in a subsequent trial, and which are worthy of notice. James Lockheart, under whom the plaintiffs below claimed as heir, conveyed to Floyd, and Floyd to Grayson. It was offered to be proved that Floyd was an alien when he accepted this deed, and conveyed away tiie title, and this proof was rejected, and an exception taken. We cannot see any purpose that this proof could answer, or that it tended to establish any point necessary in the defence. It is true that it is not proven that Floyd was even a resident alien for two years, to bring him within the act of 1800, 1 Dig. 80, which authorises aliens, other than aliene nemies, to take, hold and pass lands. But independant of that act by the principles of the common law, an alien can take and hold lands in this State, and his title is good against all the world *261 except the,government, and even against the govern-inent till inquest of office found. This principle has been so often recognized by this court and the Supreme Court of the United States, that it is unnecessary to adduce authority to support it. It has been held that an alien can take by devise, and even as a patentee from government. If he can purchase and hold, it seems necessarily to follow, that, he can sell and convey the title which he holds, and that such title will be as valid in the hands of the grantee as in his own.
°f ’9®t °andSinle* the adversary possession of ?thers> ®™" braces aliens,
Exception to ofa'paper0'1 purporting to be tho rain-trustees^f Louisville, certified by statin^th"°* grounds of objection,but cal,inS the the'min-'Y utes of the board, docs not raise the question here of the competence of the • clerk’s certificates, but the paper shall bo taken as truly the minutes.
*261 But it was proved that when this sale and con-vevance to Floyd was made, the lot in question was in the adverse possession of others, and it is urged that the act of 1799, 1 Dig. L. K. 215, which has been held sufficient to authorise the sale and conveyance ol lands derived Iromthe laws ol Virginia, while it is in the adverse possession of others, embraces only citizens, and does not extend to aliens, and enable thém to purchase lands adversely possessed. We cannot give this act such a construction. Its words are “no person procuring an interest” &c. and it is not confined to citizens. The word person must be held sufficient to embrace every one who. can purchase, and as we have seen, that an alien can purchase, it must embrace him also, as the law stood at the time this conveyance was made. The court, therefore, did not err in excluding this evidence.
The minutes or orders of the trustees of Louisville,were given in evidence and objected to; but on what ground the objection -was made, the bill of exceptions does not inform us. It has been urged in argument, that it was because they were verifiéd by a certificate of the Clerk of the board only. If this is correct, then the objection oughttohave been, because they were not shown to be minutes of the board, and the bill of exceptions expressly tells us, that the document offered, was part of the minutes of the board, and they were objected to, as such, and the inference follows, that it was on the ground that they were irrelevant and incompetent,
Copies of the records of the trustees of the to wns in Kentucky, proved (o bo correctly transcribed from the proper books, may bo competent evidence in controversies about the titles to the lots.
Evidence offered to prove the death of a co-heir.
Oi'afh of a person resid-in? abroad, how proved,
*262 We have no doubt that the minutes of the tras-teos of towns in this Commonwealth, may often become necessary evidence, in trials of titles to town property. They may show who are the trustees, or remove an uncertainty as to what lot was intended, or as in this case may temí to show that the conveyance was executed on a day different, from that on which it bears date, which was ail important fact to be proved, because on the day of the date, the power of the trustees to convey, was suspended by law. But how these minutes are to be verified, is a different question. There is no provision authorizing their verification by the Clerk, ft would then seem to follow, that they ought to be verified by oath, and proved to fie true copies from the real book of the trustees, kept by the proper officer anti recognised by the board as such. Owings vs. Speed, 5 Wheat 420; 1 Stark, on evidence 299, and authorities there cited. But we cannot conceive that the objection was taken below on this ground, from the language of the exception taken.
To establish tifie in the lessors of the plaintiff, they gave evidence conducing to prove that Archibald Lockheart had but two legitimate sons, and that his wife, by a previous marriage had a son, who was half brother to these two sons. That one of these sons of A. Lockheart was dead, having died long alter the father, and left James Lockheart the only surviving heir, and to get clear of the descent to the half brother, at the death of one of these sons, the plaintiff proved that many years since, the half brother went to Missouri with his mother; that in 1804, he was seen there, at work on a mill, he being a mechanic. A witness was then introduced who deposed that about six years since, he was in Missouri, and was there told by a Mr. Johnson, that this half brother was dead. This evidence was objected to as incompetent to prove the death of the half brother, and the objection overruled.
Some indulgence to evidence of an inferior grade is given when offered to prove the death of a person residing abroad; but we have met with no case *263 of such latitude in that indulgence, as the present. Who this Mr. Johnson was, or where he resided, or whether he had the means of knowing the fact, is not shown. The evidence is the bare sayings of a solitary man in Missouri; and certainly his being in the same State or Territory, is the only reason which can be urged for admitting the evidence. The sayings of relatives of the deceased, and perhaps of the neighbors or intimate acquaintances have been admitted to prove death, especially those made when there is no pending controversy, and when the mind of the speaker is so evenly balanced, as to be supposed to have no motive- for telling falsehood. But this is far from being the case here, For any thing that appears, it is the saying of a solitary stranger, admitted as sufficient to prove death, on which the title of the parties essentially depends.
Proof of the satomcnt of. Missouri”1*ia where the |>®rf““0a|)"0 sided, is insuf-ficicut to g™™ um
It may not bc Pros<™ed without issue, but when the g®®1 °eeSj ¿^0’0 ^j1" show it.
Worden Pope, for plaintiffs; Denny, for defendants.
Besides, the evidence is materially defective in another respect. To answer the purpose for which it was introduced, it was not only necessary to prove that the half brother was dead, but also that he died without issue, which the evidence was far from proving; see Stark, on ev. tit. Pedigree, passim. The evidence was, therefore, improperly admitted,
The judgment must be reversed with costs, and the verdict be set aside, and the cause remanded for new proceedings, not inconsistent with this opinion.